**Kimberly STIEFEL Plaintiff**

v.

**ALLIED DOMECQ SPIRITS & WINE U.S.A., INC. Defendant**

**No. CIV.01–2182.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Jan. 9, 2002.

Eddie H. Walker, Jr., Fort Smith, AR, for Plaintiff.

E. Diane Graham, Rebecca D. Hattabaugh, Fort Smith, AR, for Defendant.

## OPINION AND ORDER

DAWSON, District Judge.

On this 9th day of January 2002, there comes on for consideration the motion for summary judgment filed by defendant Allied Domecq Spirits & Wine U.S.A., Inc. ("Hiram Walker" herein) on December 4, 2001. (Doc. # 16.) Plaintiff filed suit alleging that her employment at Hiram Walker was terminated in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611–2612 (the FMLA). The defendant seeks summary judgment on the grounds that Plaintiff was terminated for chronic absenteeism, and that the absences for which she was fired were not protected by the FMLA, because Plaintiff did not suffer from a "serious medical condition." For the reasons set forth within this memorandum, the motion for summary judgment will be granted.

### Facts

Plaintiff began her employment with Hiram Walker on June 18, 1990. In 1997, 1998, and 1999, plaintiff acknowledged receipt of an Employee Handbook from Hiram Walker. Each handbook contains essentially the same provisions concerning leave, absenteeism and disciplinary policies. The handbooks place Hiram Walker employees on notice that "employees are required to be present to perform their duties," and that "excessive absence... will result in disciplinary action, up to and including discharge." (Def.'s Ex. Supp. Mot. Summ. J., Ex. "A", Attach. 7.) In addition, an employee's failure to observe company rules "will result in any one or more of the following disciplinary actions (in no particular order) being taken

against the employee... verbal warning, written warning, written warning with suspension, [or] discharge." (*Id.*) The handbooks reserve to the employer the discretion to impose corrective action depending on the circumstances and seriousness of the offense. The handbooks also contain the company policy with regard to the FMLA and provide that a rolling twelve month period commencing on the day leave begins will determine the amount of leave available. (*Id.*)

Beginning in 1992, Plaintiff received annual performance evaluations. In 1992, her attendance was rated as marginal, with the notation that "this is improving." (*See id.,* Attach. 1.) In March 1993, Plaintiff's attendance was again rated as marginal, (*id.*), and she was given a written warning on November 23, 1993. (*See id.,* Attach. 2.) In the evaluation dated July 15, 1994, Plaintiff's attendance record received a "needs improvement" rating, and she was advised to monitor her absenteeism. (*See id.,* Attach. 1.) In March 1995, her attendance was rated "needs improvement," and it was recommended that Plaintiff receive counseling for her attendance problem. (*Id.*) An evaluation made in September 1995 showed that Plaintiff's attendance had "improved a great deal" and met with acceptable company standards. (*Id.*) Plaintiff also received a good evaluation in 1996. (*Id.*)

The parties do not dispute that Plaintiff was absent[1] from work for an extended period of time beginning September 25, 1997 and continuing through February 27, 1998. Only the first twelve weeks of this absence (through December 17, 1997) was protected by the FMLA. Shortly after returning to work on March 2, 1998, Plaintiff was counseled about her chronic absenteeism. Plaintiff received more counseling

about the same problem on July 20, 1998. (*See id.,* Attach. 5.) When Plaintiff's attendance record did not improve to a satisfactory level, a written warning dated August 6, 1998 was issued to Plaintiff advising her that "for the next six months, [she could] be terminated for any additional days of absenteeism or tardiness for any reason either part or full days." (*See id.,* Attach. 6.)

Plaintiff stated in her deposition that in September 1998, she suffered a miscarriage and "nearly bled to death." (*See id.,* Ex. "B", pp. 56–57.) As a result of this medical condition, Plaintiff was absent from work for six weeks beginning September 21, 1998 through October 30, 1998. This absence was not covered by the FMLA, because Plaintiff had previously exhausted her twelve week entitlement for the year that began September 25, 1997, and because she worked only 1032.5 hours in the twelve month period that preceded September 25, 1998. (*See id.,* Ex. "A", Attach. 9..)

Plaintiff called the workplace to report that she was sick on January 12 and 13, 1999. According to Plaintiff, on January 12th she was experiencing cramping and vaginal bleeding and went to see her physician, Dr. Martin. An appointment was made for Plaintiff to see another doctor, Dr. Marvin, on January 13th. Plaintiff believes that the cramping and bleeding were related to the miscarriage she suffered in September 1998. (Pl.'s Resp. to Mot. Summ. J., Ex. 7, pp. 57–58.) According to the treating physician's hand written notes[2] on Plaintiff's medical records, the doctor noted that Plaintiff had suffered a miscarriage in September 1998 and received a Depo–Provera injection in October 1998. The bleeding was labeled "ab-

---

**1.** Plaintiff was on maternity leave for the birth of a child on January 15, 1998.

**2.** The Court believes that it has accurately interpreted the doctor's notes, but the handwriting is difficult to decipher.

normal." An ultrasound was ordered for Plaintiff, but the test results were normal. Plaintiff's birth control medication was altered, and she was advised to return for another check up in six months. The records do not indicate that a final diagnosis was made as to the cause of Plaintiff's bleeding. (*See id.*, Ex. 2.) Plaintiff returned to work on January 14, 1999 with a doctor's note, and advised her supervisor that the absences should be covered under the FMLA. Her supervisor disagreed and gave Plaintiff a written warning for chronic absenteeism. Plaintiff was also suspended without pay for five days beginning January 15, 1999. (Def.s' Ex. Supp. Mot. Summ. J., Ex. "A", Attach. 10.) Plaintiff managed to work a full shift on January 14, 1999.

On January 15, 1999, while on suspension, Plaintiff presented herself to the emergency room at St. Edward's Mercy Medical Center in Fort Smith complaining of abdominal cramping, vaginal bleeding, vomiting and a high temperature. She was tentatively diagnosed with gastroenteritis and sent home. (Pl.'s Resp. to Mot. Summ. J., Ex. 2.)

In March 1999, Hiram Walker completed a performance evaluation with regard to Plaintiff, and she received an "unsatisfactory" rating code with respect to absenteeism. (Def.'s Ex. Supp. Mot. Summ. J., Ex. "A", Attach. 1.) The evaluating supervisor noted in several different places on the report that Plaintiff's attendance needed improvement, and that Plaintiff had previously been warned and placed on a five day suspension. (*Id.*)

On Friday, July 16, 1999, Plaintiff was informed that she was to report for work the following day. Plaintiff stated in her deposition that she was not feeling well on Friday, and that she asked her supervisor in charge if she could take a vacation day on Saturday. Her request was denied. (Mem. Supp. Pl.'s Resp. Mot. Summ. J.,

Ex. 7, pp. 67–69.) According to Hiram Walker's employment records, Plaintiff had used 17 days of vacation for the calendar year that began January 1, 1999. (Ex. Supp. Mot. Summ. J., Ex. "A".) Although Plaintiff wasn't feeling well, she did work on Saturday, July 17, 1999. She returned home from work feeling "tired and exhausted." (Mem. Supp. Pl.'s Resp. Mot. Summ. J., Ex. 7, p. 71.)

According to Plaintiff's deposition testimony, by Sunday evening, July 18th, she was experiencing pain and had her husband drive her to the emergency room at St. Edward's. (*Id.* at 72.) Plaintiff stated that the treating physician ran tests and tentatively diagnosed her with either hepatitis or a virus. The medical records state that Plaintiff complained of pelvic pain during intercourse. She was given some pain medication and released to return home and told to return in a few days if she did not feel better. (*Id.*, Ex. 7 at 73–74; *see also* Ex. 6.)

Plaintiff was still feeling the effects of the pain medication on Monday morning, July 19, 1999, so she called her boss at Hiram Walker and explained that she was in a lot of pain and unable to drive. His response was to tell her that if she did not report to work at 7:00 a.m. she could be fired. (*Id.*, Ex. 7, p. 78.) Plaintiff did not go to work on Monday, but did report in on Tuesday morning, July 20th. Plaintiff was terminated from her job at Hiram Walker on July 20, 1999. The stated reason for her discharge was "excessive absenteeism."

### Summary Judgment Standard

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." FED.R.CIV.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. The court views the evidence in favor of the nonmoving party, giving that party the benefit of all justifiable inferences that can be drawn in its favor. If reasonable minds could differ as to the import of the evidence, judgment should not be granted. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *See also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (opponent must do more than simply show that there is some metaphysical doubt as to the material facts).

### Discussion

Under the FMLA, an "eligible" employee with a "serious health condition" who is unable to perform the functions of her position is entitled to twelve weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1)(D), *see also* § 2612(c). In order to survive Defendant's motion for summary judgment, the plaintiff must establish that there is a genuine issue of material fact as to whether the absence for which she was disciplined and/or fired was protected by the FMLA. The central dispute in this case concerns the Plaintiff's absences on January 13–14, 1999 and July 20, 1999. There seems to be agreement that Plaintiff met the statutory requirements determining eligibility for leave under the FMLA at those times. *See id.* § 2611(2). What the parties are contesting and the issue in this case is whether

Plaintiff suffered from a "serious health condition" entitling her to FMLA leave.

The Act defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves ...inpatient care in a hospital ... or ... continuing treatment by a health care provider." *Id.* § 2611(11). As none of the absences at issue involved an overnight stay in a hospital, we must determine whether Plaintiff suffered from a condition for which she was receiving "continuing treatment" by a health care provider.

The administrative regulations describe "a serious health condition involving continuing treatment by a health care provider" as one which involves a:

> period of incapacity... of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves... treatment two or more times by a health care provider... or ... treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i).

As we understand Plaintiff's claim, she does not allege entitlement to FMLA leave for the January and July 1999 absences on the grounds that she was incapacitated for three or more consecutive days at those times. Instead, she asserts that triable issues of fact exist with regard to the following: (1) whether her absence from work on January 12–13, 1999 was covered by the FMLA because it was the result of complications that arose from the miscarriage she suffered in September, 1998 when she was incapacitated for six weeks; (2) whether Defendant was wrong to issue the warning and five day suspension as disciplinary action for the January 1999 absence; (3) if she was wrongfully disci-

plined in January 1999, whether, under Defendant's discipline policy, the absence on July 20, 1999 would have triggered a warning with suspension and not termination; and (4) whether the July 20, 1999 absence was covered by the FMLA because it was attributable to complications arising from September 1998 miscarriage.

Defendant counters that summary judgment must be granted because there are no specific facts in the record to support Plaintiff's "self-diagnosis" that her absences in January and July 1999 were caused by continuing complications from the September 1998 miscarriage. Furthermore, even if there is a genuine issue with regard to the January 1999 absence, the fact is of little consequence. Defendant did not have a "progressive disciplinary policy," and there is no evidence to support the argument that Plaintiff could not have been terminated in July 1999 for excessive absenteeism.

 In the Eighth Circuit, a "serious health condition" is defined by an objective test based upon the facts of each case. *See Rankin v. Seagate Tech.*, 246 F.3d 1145, 1148 (8th Cir.2001). To prove the existence of a serious health condition, a plaintiff must show "(1) that she had a period of incapacity requiring absence from work, (2) that this period of incapacity exceeded three days, and (3) that she received continuing treatment by ... a health care provider." *Id.* (internal quotations and citations omitted). Without question, the miscarriage Plaintiff suffered in September 1998 was a serious health condition within the meaning of the Act. However, Plaintiff must provide some evidence to show that the absences in January and/or July 1999 involved continued, subsequent treatment or period of incapacity relating to the miscarriage. *See Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671, 674 (8th Cir.2000).

After reading the pleadings and considering the evidence in a light most favorable to the Plaintiff, we must conclude that there are no specific facts which could lead a reasonable juror to conclude that the January and/or July 1999 absences were attributable to complications arising from Plaintiff's miscarriage in September 1998. The Plaintiff has stated that she believes there was a connection, and we have no reason to doubt her sincerity. However, the record contains no opinion from a health care provider to support this medical conclusion. While Plaintiff is competent to testify that she felt bad and couldn't work, (*Rankin, id.* at 1148–49), we do not believe that she is qualified to give a medical opinion her physical condition was related to the miscarriage.

 Even if Plaintiff was given the benefit of any doubt with regard to whether the January and July 1999 absences were covered by the FMLA, it does not necessarily follow that Plaintiff was wrongfully terminated on July 20, 1999. Each of the employee handbooks given to Plaintiff by Hiram Walker plainly states that available disciplinary actions need not be taken in any particular order, and that the employer has discretion to decide the appropriate measure to take if an employee fails to obey company rules. Absences that are not attributable to a "serious health condition" are not entitled to protection under the FMLA, and an employee is not protected against disciplinary action based upon such absences. *See Bailey v. Amsted Indus., Inc.*, 172 F.3d 1041, 1045–46 (8th Cir.1999). The Plaintiff's poor attendance record over the years is sufficient to justify the Defendant's decision to terminate her employment for chronic absenteeism.

## Conclusion

The motion for summary judgment should be and hereby is GRANTED, and

this case is hereby DISMISSED. Each party shall bear its own costs.

IT IS SO ORDERED.