United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 30, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 04-11213
_____

KIM W. LUBKE,

Plaintiff-Appellee,

versus

CITY OF ARLINGTON, et. al.

Defendants,

CITY OF ARLINGTON,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District of Texas
No. 4:02-CV-188-Y

_____

Before JONES, Chief Judge, and DEMOSS and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:

What began as a routine disciplinary effort to ensure work attendance during the run-up to "Y2K" ended in the discharge of a 22-year veteran of the City of Arlington, Texas, Fire Department. He filed suit challenging the discharge, inter alia, as a violation of the Family and Medical Leave Act, 29 U.S.C. 2601 et seq.("FMLA"). The City now appeals from a substantial adverse jury award. We AFFIRM liability but REVERSE and REMAND the damage award for further proceedings.

**I.   BACKGROUND**

Kim Lubke was a Battalion Chief in the City of Arlington's Fire Department in charge of eight fire stations and forty to fifty employees.

In preparation for the year 2000 ("Y2K"), the City's critical departments, including the Fire Department, developed contingency plans in the event widespread electronic problems should arise. The Y2K plan was in effect from 6 p.m. December 31, 1999, through 7 a.m. January 2, 2000. To ensure full staffing during that weekend, the City required all Fire Department employees to report to a designated Battalion Chief by dawn each day before reporting for duty. During the pendency of the Y2K plan, they were not permitted to call the unmanned answering machines ("call boxes") to report unscheduled leave. Additionally, the City restricted its normal, more informal sick leave policies, and instead required a doctor's written substantiation of any absence.

Lubke was scheduled to work from December 31, 1999, through January 1, 2000. On December 30, 1999, at 8:11 p.m., Lubke telephoned a call box and left a message stating that he would not be at work during the Y2K weekend because he needed to stay home to care for his sick wife, who also was employed by the City. Throughout December, Lubke's wife was ill with flu symptoms and back pain. Lubke claimed at trial that his wife's back pain had been a chronic, periodically occurring condition. He also

2

testified that she was incapacitated from December 30, 1999, through the morning of January 3, 2000.

The Lubkes both returned to work on January 3. Lubke submitted a standard leave form, on which he wrote: "Wife was ill with severe bronchitis/possible pneumonia. During coughing spells had strained back muscles and could not get out of bed. Needed my assistance." He attached to the leave form an examination form from a doctor dated December 22, 1999, as well as receipts for three prescriptions for Mrs. Lubke, one of which was filled December 22, and the other two of which were filled on December 29. Lubke's paid leave was disapproved for insufficient substantiation. Lubke's wife, however, submitted identical documentation to the City, and her leave was approved.

Even before Lubke submitted his leave form, Assistant Fire Chief Larry Brawner lodged a personnel complaint against Lubke for his unscheduled Y2K leave. Lubke acknowledged receipt of the complaint. He "repeatedly" asked Brawner what type of substantiation would be sufficient, but Brawner refused to answer. On January 15, Lubke asked Human Resources for clarification on the substantiation issue, but was referred back to Brawner, who again refused to answer.

Further details of the extensive grievance procedures that ensued are unnecessary to recount. Viewed in the light most favorable to the jury verdict, the dispute initially concerned whether two days of sick leave should be treated as paid or unpaid.

3

From January to mid-April, Lubke was never clearly informed of what medical substantiation of his wife's condition was required, nor was he warned that he could be fired for not providing it.

On April 14, 2000, Brawner notified Lubke of his impending discharge for dereliction of duty, unauthorized absence, and insubordination. To no avail, Lubke asked for two additional days to obtain a report from his wife's doctors. He was discharged effective April 19. A week later, Mrs. Lubke submitted a letter from Dr. Wilkerson, her treating physician, dated December 22, 1999, which addressed her condition and explained why Lubke had to be present to care for his wife. This was followed by another letter from Dr. Pulliam, the Lubkes' regular doctor, which also addressed Mrs. Lubke's condition, and confirmed her husband's decision.

In early May, Lubke appealed his discharge to Fire Chief Robin Paulsgrove. Chief Paulsgrove acknowledged that the doctors' letters provided adequate medical documentation and substantiation, but he considered them untimely and upheld the discharge.

Lubke sued the City, Paulsgrove, and Brawner on FMLA and Fair Labor Standards Act ("FLSA") claims in state court. After the City removed to federal court, the district court granted the City summary judgment on the FLSA claim and, subsequently, dismissed the individual defendants, against whom the FMLA offers no relief. A ten-day jury trial resulted in a verdict for Lubke on his FMLA claim against the City. The judgment awarded Lubke damages for

4

lost wages and benefits ($395,394), liquidated damages ($300,000), attorney fees ($305,292), and court costs ($9,576).[1]

## II.  DISCUSSION

The City argues that the district court erred in 1) denying the City's JML regarding Lubke's failure to present legally sufficient evidence that his wife had an FMLA "serious health condition" on the days in question; 2) denying the City's JML motion and granting Lubke JML regarding medical certification under the FMLA; 3) excluding evidence of Lubke's prior disciplinary problems; 4) determining the measure of damages for Lubke's lost insurance benefits; and 5) not offsetting the amount of Lubke's retirement plan payout from his award of back pay.  We address each issue in turn.

### A.  Serious health condition

The logical first question for analysis is whether Lubke's leave qualified for FMLA protection.  FMLA assures unpaid leave for family members who must care for relatives with a "serious health condition."  The City argues that the district court erred in denying the City's JML regarding Lubke's failure to present legally sufficient evidence that his wife had an FMLA "serious health condition" over the Y2K weekend.

---

[1]  An employer that violates the FMLA may be liable for lost wages and benefits, liquidated damages, attorney fees, and court costs.  29 U.S.C. § 2617(a).

5

This court reviews de novo a district court's ruling on a JML, applying the same legal standard used by the district court. Coffel v. Stryker Corp., 284 F.3d 625, 630 (5th Cir. 2002). A JML should only be granted if "a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Flowers v. S. Reg'l Physician Servs., Inc., 247 F.3d 229, 235 (5th Cir. 2001). Although our review is de novo, the "standard of review with respect to a jury verdict is especially deferential." Brown v. Bryan County, Okla., 219 F.3d 450, 456 (5th Cir. 2000).

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Department of Labor ("DOL") regulations go into elaborate detail, setting out five types of conditions that can qualify as continuing treatment by a health care provider. 29 C.F.R. § 825.114(a)(2). Only one of these arguably applies in the instant case:

> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> * * *
>
> > (iii)    Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2)(iii).[2]

Lubke presented extensive evidence at trial regarding his wife's "serious health condition." Both he and his wife testified about her chronic back problems, as did Mrs. Lubke's coworker and supervisor. Mrs. Lubke's physician, Dr. Pulliam, testified that she experienced chronic but episodic back problems for which he prescribed medications. Medical records introduced at trial corroborated that Dr. Pulliam examined and treated Mrs. Lubke's back condition for nearly a decade, during which he prescribed forty medications, including muscle relaxers, anti-inflammatories, sleep medication, and narcotic pain medications. This evidence was legally sufficient for a jury to find a chronic condition under § 825.114(a)(2)(iii).

---

[2] Contrary to Lubke's argument, the evidence does not support a finding that Mrs. Lubke has a "serious health condition" as defined under § 825.114(a)(2)(i).

The City objects that because discovery violations resulted in the exclusion from trial of Dr. Pulliam's formal expert opinion, Lubke's evidence was insufficient as a matter of law. While we agree that the existence of an FMLA-covered serious health condition will often necessitate confirmation by means of an expert medical diagnosis, the testimony just mentioned allowed the jury reasonably to infer that Mrs. Lubke indeed suffered from recurring, chronic back pain as defined by this regulation. The City misreads Stiefel v. Allied Domecq Spirits & Wine, 184 F. Supp. 2d 886 (W.D. Ark. 2002), the only case it cites as requiring expert medical opinion to prove a "serious health condition" under the FMLA. In Stiefel, the plaintiff's condition and symptoms in July — hepatitis, virus, or pelvic pain — were not the same symptoms produced by a miscarriage ten months earlier. Id. at 890. As a result, the court held that the plaintiff's conclusory belief of a connection could not alone justify the inference that her July absences were connected to the previous miscarriage. Id. at 891. Stiefel, like the district court here, applied ordinary evidentiary rules to reach an ordinary, sensible conclusion regarding admissibility.

The City also errs in suggesting that expert testimony was necessary to demonstrate Mrs. Lubke's incapacity. See Rankin v. Seagate Techs., Inc., 246 F.3d at 1145, 1148 (8th Cir. 2001) (plaintiff's affidavit that she was too sick to work, her testimony of her conversations with nurses about her condition, and her

8

medical records were "sufficient to create a genuine issue of material fact regarding her incapacity"); Marchisheck v. San Mateo County, 199 F.3d 1068, 1074 (9th Cir. 1999) (plaintiff's declaration that "I just did not and could not do anything for four or five days" created a disputed fact issue on incapacity).

Finally, the City argues that, even if lay opinion may suffice to demonstrate a "serious medical condition," the evidence produced was not enough to demonstrate that Mrs. Lubke's back pain condition was periodic under 29 C.F.R. § 825.114 (a)(2)(iii)(A) (requiring periodic visits to a health care provider). The City contends that "periodic" necessarily means treatment at regular intervals, and one dictionary defines it to mean "[h]aving or marked by repeated cycles," "[h]appening or appearing at regular intervals," or "recurring or reappearing from time to time." AMERICAN HERITAGE COLLEGE DICTIONARY 1035 (4th ed. 2002). But synonyms include sporadic, intermittent, occasional, and fitful, all of which fit within DOL's regulation. The City's definition would lead to absurd results if the regulation required doctor visits only at precise intervals not coinciding with the flare-ups of a chronic condition. Clearly, the DOL intended that periodic visits could correlate with the anticipated episodic nature of chronic conditions. See 29 C.F.R. § 825.114 (a)(2)(iii)(A) and (C).

9

The jury had legally sufficient evidence to conclude that Lubke's wife experienced a "serious health condition" for which FMLA leave is allowed.[3]

## B. Medical Certification

The City contends that Lubke's leave was not protected by the FMLA because Lubke failed to provide the timely adequate medical certification to support his claimed leave. The City argues that, by denying the City's JML and granting Lubke's JML regarding medical certification under the FMLA, the district court effectively "disallowed altogether the City's evidence and arguments on [FMLA] medical certification." This is essentially correct. The court ruled that, as a matter of law, the City "failed to properly request or require Mr. Lubke to provide medical certification as required under FMLA['s]" regulations. See 12 R.7. Accordingly, the court concluded, Lubke "was not required to provide medical certification." See id.

Under the FMLA, "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee or . . . spouse . . . [and] [t]he employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a). DOL

---

[3] At trial, the parties vigorously disputed whether Lubke furnished appropriate notice to the City of FMLA-qualifying leave. See Willis v. Coca-Cola Enters, Inc., 445 F.3d 413, 418-19 (5th Cir. 2006) ("FMLA and the relevant caselaw from our sister circuits require, even in the case of involuntary leave, that the employee provide sufficient notice to an employer of the need to take FMLA leave ..."). The jury found in Lubke's favor, and the City has not challenged the finding in this court.

10

regulations amplify when and how employers may require certification. Each time an employer demands certification, a regulation requires, in pertinent part:

- That the employer request medical certification in writing. 29 C.F.R. § 825.301(b)(1).

- In the case of unforeseeable leave, that the request be made, "[i]n most cases . . . within two business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration." 29 C.F.R. § 825.305(c).

- That the request for certification advise the employee of "the specific expectations and obligations of the employee and explain[ ] any [anticipated] consequences of a failure to meet these obligations." 29 C.F.R. § § 825.301(b)(1), 305(d).[4]

- That the employer allow the employee at least 15 days to respond to the medical certification request. 29 C.F.R. § 825.305(b).

- In case the original certification is insufficient or incomplete, that the employer "provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d).

The regulation finally provides that, "[i]f an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f). The district court ulti-

---

[4]    Section 825.301 merely says "explain any consequences" but § 825.305 clarifies that the employer need only "advise . . . of the anticipated consequences."

11

mately[5] applied this "sanction" subsection to prevent the City, which failed to comply with several of the regulation's technical notice aspects, from contending that Lubke failed to submit timely medical substantiation for FMLA leave. Assuming, without deciding, that the district court should not have applied § 825.301(f) as a sanction for technical noncompliance with the certification rule, its error was, under these circumstances, harmless. Some explanation is required. In Ragsdale v. Wolverine World Wide, 535 U.S. 81, 122 S. Ct. 1155 (2002), the Supreme Court addressed 29 C.F.R. § 825.700(a), which required an employer who had not told an employee that her leave was being counted toward the FMLA's twelve-week limit to toll the limit until the employee was so advised. Ragsdale, 535 U.S. at 84, 122 S. Ct. at 1158-59. The Court acknowledged that under Chevron v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782 (1984), courts must give considerable weight to the Secretary's judgment in implementing DOL regulations and should not overturn them unless "arbitary, capricious, or manifestly contrary to the statute." Ragsdale, 535 U.S. at 86, 122 S. Ct. at 1160. Nevertheless, the Court held that the "challenged regulation is invalid because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any real impairment of

_____

[5] In a pretrial summary judgment order, the court found that the sufficiency of the City's request for and Lubke's response regarding medical substantiation raised fact issues under the statute. The court changed its mind, however, during a pretrial hearing.

12

their rights and resulting prejudice." Id. at 90, 122 S. Ct. at 1162. As a result, the regulation impermissibly created broader substantive rights than those permitted by the statute. See id. at 90-91, 122 S. Ct. at 1162. FMLA's remedial scheme requires an employee to prove prejudice as a result of the employer's lapse; the employee may not expand the statute's coverage as a penalty for an employer's technical compliance shortcoming.

Ragsdale's reasoning counsels that the district court could not implement § 825.301(f) if the consequence of doing so was to afford Lubke an FMLA remedy to which he was not otherwise entitled. Absent such entitlement, Lubke could not demonstrate prejudice from the City's defective notice. The jury found, however, after a vigorous evidentiary contest, that Lubke's leave qualified under FMLA. Further, the City conceded that had Lubke submitted the doctors' letters earlier in its investigatory process, it would have approved his FMLA leave. Thus, Lubke clearly proved prejudice because, absent a finding — unjustified by the disputed evidence — that his medical certification was untimely as a matter of law, he could have submitted the doctors' reports and not been fired.

On the record as a whole, assuming the district court's ruling was erroneous, it did not deprive the City of its entitlement to medical substantiation, see 29 U.S.C. § 2613(a), and it did not confer on Lubke greater rights than those afforded by FMLA.

13

## C.  Excluded evidence

The City next argues that the district court erred in excluding evidence of Lubke's prior disciplinary problems.  We review a district court's decision to exclude evidence for abuse of discretion, <u>National Hispanic Circus, Inc. v. Rex Trucking, Inc.</u>, 414 F.3d 546, 551 (5th Cir. 2005), tempered by the harmless error rule.  <u>Id.</u>  Here, there is no abuse of discretion.

The district court excluded any evidence of Lubke's past disciplinary problems, because, in response to a request for admission, the City unequivocally "Admitted" that Lubke was discharged for the Y2K absence events only.  Given the City's admission, and the consequent irrelevance of Lubke's disciplinary history to the decision to terminate, the district court did not abuse its discretion in excluding the evidence.  Likewise, the two prior infractions were unnecessary to rebut Lubke's representation that he was a dedicated firefighter.  The City argues that Lubke's assertions left the jury with the impression that he was a good employee who had not been subjected to disciplinary action.  Lubke did not, however, intimate that "dedicated" meant "no disciplinary problems."  Rather, Lubke's dedication could aptly describe his twenty-two years of service.  Because the City's other arguments for admitting this evidence are even less substantial, the district court did not abuse its discretion in excluding it.

## D.  Measure of damages for lost insurance benefits

14

The City next contends that the district court erred in holding that the proper measure of damages for Lubke's lost insurance benefits is the "value" of the lost insurance. The district court only allowed evidence about the "value" of the lost insurance and excluded evidence that Lubke sustained no out-of-pocket loss to replace his insurance.[6] The City argues that the lost "value" is not recoverable and urges that the correct measure of damages is either 1) actual replacement cost for the insurance, or 2) expenses incurred that would have been covered under his former insurance plan. We review the district court's ruling regarding the proper measure of damages de novo. Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 230 (5th Cir. 2002).

The FMLA's remedial provisions state:

> An employer who violates section 2615 of this title shall be liable to any eligible employee affected . . . for damages equal to . . . the amount of . . .
>
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation.

29 U.S.C. § 2617(a)(1)(A). This plain language does not assist in answering whether, as the district court determined, the value of lost insurance benefits alone is a proper measure of damages. Our

---

[6] Lubke didn't pay for substitute coverage because he became covered by his wife's City-furnished medical insurance.

15

holdings in similar Age Discrimination in Employment Act ("ADEA") cases, however, are instructive.

In ADEA cases, an employee "is limited to recovery of those expenses actually incurred by either replacement of the lost insurance or occurrence of the insured risk." Pearce v. Carrier Corp., 966 F.2d 958, 959 (5th Cir. 1992); see also Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 179 (5th Cir. 1992). Although Lubke disputes the applicability of ADEA cases, the ADEA incorporates the remedies available under the Fair Labor Standards Act ("FLSA"). See 29 U.S.C. § 626(b). Moreover, "the legislative history of the FMLA reveals that Congress intended the remedial provisions of the FMLA to mirror those in the FLSA." Nero v. Indust. Molding Corp., 167 F.3d 921, 928 (5th Cir. 1999) (quoting Frizzell v. Sw. Motor Freight, 154 F.3d 641, 644 (6th Cir. 1998)). Because the remedies available under the ADEA and the FMLA both track the FLSA, cases interpreting remedies under the statutes should be consistent. Consequently, we hold that the correct measure of damages for lost insurance benefits in FMLA cases is either actual replacement cost for the insurance, or expenses actually incurred that would have been covered under a former insurance plan. The lost "value" of benefits, absent actual costs to the plaintiff, is not recoverable. Here, because the jury awarded an undifferentiated sum for employee benefits without segregating insurance benefits, and the award was based on an

16

incorrect understanding of FMLA remedies, we must remand to the district court for redetermination of this damage element.

### E. Offsetting the amount of retirement plan payout

Finally, the City argues that the district court should have offset the amount of Lubke's retirement plan payout, which he received at termination, against his damage award.

As a threshold matter, Lubke argues that the City waived its offset argument by not pleading it as an affirmative defense, pursuant to FED. R. CIV. P. 8(c). Regardless whether the City pled offset, however, both parties addressed the issue in their pretrial motions in limine. Lubke was on notice of the City's position and suffered no prejudice by the absence of a formal initial pleading. Giles v. General Elec. Co., 245 F.3d 474, 494 n.36 (5th Cir. 2001).

An employer's portion of retirement and other payments made to a terminated employee must be deducted from an award of lost wages and benefits in ADEA discrimination cases. See Brunnemann, 975 F.2d at 179 n.7 (noting that "a deduction is allowed for sums received from retirement benefits" upon termination); Guthrie v. J.C. Penney Co., Inc., 803 F.2d 202, 209-10 (5th Cir. 1986) (holding that "Guthrie's back pay award should be reduced by payments received from Penney's retirement fund"). The City argues that this rule should apply in FMLA cases. The district court, on the other hand, adopted the rationale used in personal injury tort cases and applied the collateral source

17

rule. See Haughton v. Blackships, Inc., 462 F.2d 788 (5th Cir. 1972). Where the City is being sued in its capacity as an employer, not as a tortfeasor, the ADEA discrimination cases are more analogous.

Lubke responds that, even if the amount of the retirement plan payout should be deducted from an award of FMLA back pay, the rule should not apply to his case because he and the City both contributed to the funds in which the retirement benefits were held.[7] Because Lubke should not be penalized for his contributions, and the City should receive the benefit of our relevant precedent, we hold that an offset should be allowed for the employer's portion of Lubke's retirement plan payout at his termination.

The consequence of this ruling and of the court's erroneous measure for lost insurance benefits is that the entire damage award must be revised or retried. Only thus can the retirement payment be offset against the full amount of both backpay and the recomputed benefits award. The liquidated damages will then also require reconsideration.

### III. CONCLUSION

---

[7] Lubke also argues that the ADEA cases should not apply because lost wages are legal relief under the FMLA, but are equitable relief, and thus discretionary, under the ADEA. We find any distinction, however, meaningless. The measure of damages for lost wages is the same whether it is equitable or legal. In one case a jury decides and in the other a court decides. Both decisionmakers have ample discretion in making the awards, and the proper measure must be the same in each case.

For the reasons discussed above, we affirm liability but vacate and remand for proceedings to reassess damages in accordance herewith.

**JUDGMENT AFFIRMED IN PART, VACATED AND REMANDED IN PART.**