# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 08-11098

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 16, 2010

Lyle W. Cayce
Clerk

DIANE G. REED, Real party in Interest,

Plaintiff - Appellee Cross-Appellant

v.

CITY OF ARLINGTON,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:

Kim Lubke, formerly an Arlington, Texas, firefighter, obtained a large verdict against the City of Arlington pursuant to the Family Medical Leave Act (FMLA). *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006). During the City's appeal to this court, Lubke and his wife filed a Chapter 7 bankruptcy case but omitted the pending $1 million-plus judgment from his sworn statements and bankruptcy filings. He obtained a discharge of $300,000 in debt, while the creditors were led to believe his was a "no asset" case. The principal question raised in this appeal is whether judicial estoppel should prevent not only Lubke but his bankruptcy trustee from collecting the judgment against the City. Under

all the facts and circumstances, we conclude that to protect the integrity of judicial processes, judicial estoppel bars the trustee from collecting the judgment. The judgment of the district court is REVERSED.

## Background

Lubke's deception spawned a convoluted series of court proceedings. Initially, Lubke sued the City of Arlington, Texas, alleging, *inter alia*, that his firing violated the FMLA. On April 15, 2004, a jury found in Lubke's favor and awarded him $395,000 in damages. On May 13, 2004, the district court also awarded Lubke $300,000 in liquidated damages and approximately $315,000 in fees and costs, for a total judgment of over $1 million. After post-trial briefing, the City appealed on September 29, 2004.

On June 10, 2005, while the appeal was pending, Lubke and his wife filed a voluntary Chapter 7 bankruptcy petition. Lubke did not inform his attorney in the FMLA case, Roger Hurlbut, about the filing. Lubke failed to list the sizeable judgment on his schedule of assets and repeatedly violated bankruptcy law by omitting the judgment from his sworn statements and filings. He also omitted several other items of nonexempt property that could have been available for distribution to his creditors.[1] The Lubkes had approximately $300,000 in mostly credit card debt. The bankruptcy court deemed their case a "no-asset" case on September 28, 2005. The Trustee, Diane Reed, then closed the case and the Lubkes were discharged from their debts.

Without knowing of Lubke's bankruptcy, a panel of this court heard oral argument on December 7, 2005, and, on June 30, 2006, issued an opinion affirming the verdict against the City, but remanding to recalculate damages.

---

[1] The omitted required disclosures were: 1) an oil and gas lease on which the Lubkes had not been paid any royalties, 2) ownership of five goats, 3) the Lubkes' flea market business, its inventory, and any other assets, and 4) all of the businesses, no longer operating, the Lubkes operated during the past six years and their trade names. Regarding the businesses, the district court mentions a lawn-mowing business that closed a year before the petition date, and the court states some evidence exists that the Lubkes were involved in farming at some point.

*Lubke*, 455 F.3d at 500.  On July 31, 2006, the City offered Lubke a Rule 68 judgment for $580,000.  When Hurlbut called Lubke to discuss the offer, Lubke apparently told Hurlbut about his prior bankruptcy for the first time.  On August 3, 2006, Hurlbut informed Reed's counsel of Lubke's bankruptcy and, on August 7, Reed and Lubke agreed to seek reopening of the Chapter 7 case.  The bankruptcy court granted reopening on August 10.[2]  Reed attempted to accept the City's Rule 68 offer.  Finally, Reed filed a motion to substitute herself for Lubke in district court, which the court, although divested of jurisdiction by the appeal, granted anyway.

After being the last party informed of Lubke's undisclosed bankruptcy, the City filed a supplement to its petition for rehearing, which was still pending before us.  The City sought a take-nothing judgment against Lubke, arguing that he should be judicially estopped from collecting due to his failure to schedule the judgment in his bankruptcy case.  This panel held a special hearing on September 6, 2006.  Meanwhile, on December 5, 2006, the bankruptcy court revoked Lubke's discharge on a motion that, by agreement with Reed, did not contain findings of fraud.  On December 19, 2006, we denied the City's petition for rehearing of the FMLA judgment but remanded the case for the district court to recalculate damages and to rule initially on the City's judicial estoppel claim.

On remand, the district court ratified its earlier order substituting Reed for Lubke, and Reed has since pursued Lubke's judgment on behalf of the bankruptcy estate.  After several hearings, the district court made three discrete rulings—finding a novel remedy for judicial estoppel; reducing damages per our instructions on remand; and awarding additional attorney's fees.  Because of our conclusion on judicial estoppel, the parties' appellate issues on the other two rulings need not be reached.

---

[2]  After the case was reopened, only $55,000 of the prior $300,000 in unsecured claims were timely filed; approximately $45,000 in claims were filed late; and Hurlbut asserted two claims for attorney's fees totaling $449,095.

3

## The District Court's Judicial Estoppel Ruling

The district court applied this court's three requirements for judicial estoppel: (1) inconsistent positions, (2) the court's acceptance of inconsistent positions, and (3) absence of inadvertence. *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004).[3] The court found that, although the elements of judicial estoppel were satisfied regarding Lubke, they were not satisfied regarding Reed, the Trustee, and she should thus be permitted to pursue Lubke's judgment. The court then crafted an unusual remedy. It ordered the City to pay the entire FMLA judgment to Reed, but, concerned that Lubke would benefit from any remaining funds not disbursed to creditors, the court ordered any remaining funds returned to the City.

Despite finding that Lubke's recovery on his claim must be judicially estopped, the court balanced the bankruptcy policies of requiring the bankrupt to disclose all of his assets and of satisfying creditors' claims to the extent possible. Because judicial estoppel is an equitable doctrine, the court reasoned, its novel remedy was justified. The court supported this ruling by pointing out that after Lubke sought bankruptcy relief, the judgment was no longer his property, but the estate's, until administered or abandoned. *See* 11 U.S.C. §§ 541, 554. A take-nothing judgment, the court reasoned, would deprive Lubke's creditors of their remedy.

The City appeals the judicial estoppel ruling. Reed's arguments defend the ruling and the remedy. Both parties avail themselves of our disparate authorities.

---

[3] "This circuit . . . has recognized three particular requirements [for judicial estoppel]: (1) the party is judicially estopped only if its position is clearly inconsistent with the previous ones; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." 374 F.3d at 335.

The district court's decision regarding judicial estoppel is reviewed for abuse of discretion. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008). Erroneous application of the governing legal principles here constitutes such an abuse.

Judicial estoppel is a doctrine that protects the integrity of court proceedings by preventing "a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice, § 134.30, pp. 134-62 (3d ed. 2000)). Because it is an equitable doctrine, judicial estoppel is not rigidly defined, but the Supreme Court has articulated three factors that generally inform its application: (1) whether a party's later position is clearly inconsistent with its position in a prior case; (2) whether the party succeeded in persuading the first court to accept its position, creating "the perception that either the first or the second court was misled;"and (3) whether the party espousing the inconsistency has gained an unfair advantage or imposed an unfair detriment on an opposing party by that means. *Id.* at 750-51.

This court's decisions applying judicial estoppel to claims concealed from bankruptcy courts uniformly cite these criteria, but their results create, to put it kindly, a mosaic. In the first of these cases, judicial estoppel prevented a debtor's successor from upholding the judgment it obtained by pursuing, outside of bankruptcy, an undisclosed claim that had accrued to the debtor's estate. *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197 (5th Cir. 1999) (cited with approval in *New Hampshire v. Maine*, 532 U.S. at 750). In the second case, a debtor misinformed the bankruptcy trustee that her personal injury claim against Superior Crewboats was prescribed, but she filed suit against that company while she remained in bankruptcy nonetheless. This court, on interlocutory appeal in the tort suit, held the debtor judicially estopped from pursuing the suit. *In re Superior Crewboats,* 374 F.3d at 332-33. The trustee's motion to substitute as plaintiff in the tort suit was denied as moot. *Id.* at 336.

5

The third case also involved a tort claim that the debtor failed to reveal to the trustee, but this court distinguished both *In re Coastal Plains* and *In re Superior Crewboats* and held that despite the presence of intentional concealment and duplicitous conduct in the bankruptcy court, "equity favors the Trustee." *Kane*, 535 F.3d at 387. Judicial estoppel was refused. *Id.*

What are the bankruptcy courts, which confront these problems regularly in our circuit, to make of these decisions? The grounds on which *Kane* distinguished *In re Coastal Plains* are that, in *In re Coastal Plains*, a corporate officer's misdeeds detrimentally influenced the corporate reorganization process as well as depriving creditors of the concealed cause of action. *Id.* *Kane* purports to distinguish *In re Superior Crewboats,* moreover, based on the differing procedural consequences between a trustee's abandonment of a claim (to the debtor) and the non-disclosure of assets that are not administered although still within the debtor's estate. *Id.* at 386-87. Whether these distinctions are correct in principle or on the facts are matters for another debate. Absent en banc harmonization, we must endeavor to reconcile the authorities. We are also guided by the principle that one panel of this court cannot overrule another panel decision. *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999). Thus, judicial estoppel remains applicable to litigation claims that are undisclosed in bankruptcy, and the doctrine's essential ingredients remain the same.

The lowest common denominator appears to lie in a holistic, fact-specific consideration of each claim of judicial estoppel that arises from litigation claims undisclosed to a bankruptcy court. In *In re Coastal Plains*, this court carefully reviewed the complex business consequences following from the inconsistent positions that the debtor's CEO deliberately undertook and refused to "encourage bankruptcy debtors to conceal claims, write off debts, purchase debtor assets at bargain prices, and then sue on undisclosed claims and possibly recover windfalls." *In re Coastal Plains*, 179 F.3d at 213. In *In re Superior*

6

*Crewboats*, this court rejected the proposition that the debtor, whose ruse had been discovered, could re-open the bankruptcy case later on, amend her schedules to include the claim in litigation, and proceed even after the statute of limitations had run against the defendant. *In re Superior Crewboats*, 374 F.3d at 336. *Kane*, in contrast, must be viewed as a "simple" case in which "the only way the Kanes' creditors would be harmed is if judicial estoppel were applied to bar the Trustee from pursuing the claim against Defendants on behalf of the estate." *Kane*, 535 F.3d at 387.

In this case, the factual basis for applying judicial estoppel was found by the district court and is not even challenged on appeal by Reed. Thus, it is undisputed that Lubke repeatedly misrepresented his assets and concealed from the trustee, the creditors, and the court his million dollar judgment against the City; that he benefitted from the existence of the judgment and the discharge of debts he received; and that parties were harmed by the duplicitous conduct. As a college graduate, Lubke's actions were far from "inadvertent." The district court declined to apply judicial estoppel against Reed, however, on the *Kane*-like rationale that Reed had not engaged in inconsistent conduct and "the creditors" would be unduly harmed by Reed's inability to pursue the appeal to fruition. The court's strategy for serving the doctrine's equitable purpose led it to order that Lubke may under no circumstances profit from the judgment while Reed may continue to represent the estate's interests.

The district court erred in two ways. First, it is not sufficient to distinguish the debtor's conduct from that of the trustee in applying judicial estoppel. Even though Reed herself takes no inconsistent legal positions, she succeeds to the debtor's claim with all its attributes, including the potential for judicial estoppel. For this reason, "splitting the baby" in both the analysis of fault and the proposed remedy is not an acceptable substitute for thorough review of the effects of the misconduct. Second, contrary to the district court's

assumption, this was not a simple "*Kane*" case. The balance of harms disfavors permitting this litigation to continue.

The creditors are not materially advantaged if this case proceeds further. Only about one-sixth of the original creditors (reckoned in amount of claims) timely refiled when the case was re-opened a year after they were informed there were no non-exempt assets to distribute. *See supra note 2.* The untimely filers have little if any hope of recovery from the bankruptcy estate; the timely filers' recovery will be contingent on the payment of large priority administrative expenses caused by the ongoing litigation. True, Lubke agreed to revoke his discharge, but most creditors will have foregone alternative collection strategies at this point. The principal remaining bankruptcy "claimants" are Reed herself and Lubke's trial attorney Roger Hurlbut, who has already received from Lubke some payment for his services. Reed's claim has been substantially increased because of this judicial estoppel litigation. Here, equity does not favor ignoring Lubke's misuse of the court system for the primary benefit of attorneys.

It is also possible to conclude that the City, despite being adjudged guilty of an FMLA violation against Lubke, has been victimized by the non-disclosure of his bankruptcy. The City is statutorily liable for Lubke's attorney fees, but this liability stems from the need to vindicate an employee's rights, not to suffer the consequences of the employee's deception of others. Lubke's concealment of the judgment in bankruptcy court created numerous complications that have dramatically increased the fees charged by Reed, and have cost the City and its taxpayers far more than they would have had to bear because of an ordinary appeal.

Finally, Lubke, although deprived of a discharge and the proceeds of the FMLA judgment, has effectively been rid of his creditors. By entangling the creditors in his web, he has hindered and delayed their efforts to seek reimbursement of his debts. He has also benefitted from his continued possession and enjoyment of other unscheduled assets—a retail business, farm

8

income, livestock and a mineral lease that Reed evidently chose not to pursue for the creditors' benefit while the FMLA judgment loomed large.

Considering all of the costs and consequences that Lubke's inconsistent positions have engendered, we conclude that equity does not support further continuation of this litigation and that both Lubke and Reed must be judicially estopped from pursuing it.  The district court abused its discretion by failing to consider the doctrine from a fact-specific perspective  concerning all parties involved.  Not to uphold judicial estoppel in this instance would  send debtors the message that they " 'should consider disclosing personal assets only if [they are] caught concealing them.' "  *In re Superior Crewboats*, 374 F.3d at 336 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)).

The judgment of the district court is **REVERSED**.