EDITH H. JONES, Chief Judge,
with whom DeMOSS and EDITH B. CLEMENT, Circuit Judges, join, dissenting:
With due respect to my brethren, I respectfully dissent from their balancing of the equities in this case and from one significant legal point. We do not disagree on the general principles governing judicial estoppel except for one thing. The majority posits that only the interests of the bankruptcy process are involved here. I would contend that the federal district and circuit courts are part of the relevant judicial process, and that a broader view should have been taken of the impact of satellite litigation generated by Lubke’s deception. First, our court had to expend significant resources concluding an opinion in the original appeal of this case, only to find that the plaintiff was no longer the proper party. Accordingly, we were required to remand for reconsideration by the district court a plethora of procedural issues made necessary only by Lubke’s deception. These events necessitated a special oral argument hearing, another appellate opinion, and eventually, an en bane decision attempting to resolve our conflicting precedents.[1] Second, because this *580 two-party dispute evolved into a protracted three-party dispute with the trustee and her counsel, the fairness of the fee award exacted against the taxpayers of the City of Arlington has been seriously compromised, contrary to the courts’ duty to impose reasonable fees on a defendant. This may be brushed off as simply the logical consequence of the convoluted legal proceedings, but it is Lubke’s deception that set them in motion, not the City’s violation of his FMLA rights. Thus, the majority’s reasoning purports to protect the interests of creditors in general, while overlooking that the goal of judicial estoppel is to protect the integrity of the entire judicial process. New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S.Ct. 1808,1814,149 L.Ed.2d 968 (2001).
How Lubke perverted the overall judicial process is easily explained. Had he revealed to his employment lawyer Hurl-but that he was filing a Chapter 7 petition just after the city’s appellate brief had been filed in this court, the trustee would have immediately been substituted as the real party in interest. The trustee might have accepted the Rule 68 Offer of Judgment, and there would have been no need for a remand to consider judicial estoppel. Thus, the City would not have had to invoke In re Superior Crewboats, Inc., 374 F.3d 330 (5th Cir.2004), the then-governing authority that strongly supported a claim for judicial estoppel.[2] There might even have been no need for a trial on remand to recalculate damages, inasmuch as the financial dynamics of Chapter 7 often impel a trustee to settle litigation involving the debtor in order to wind up a case expeditiously and inexpensively. Certainly, this case would have terminated much faster and more sensibly, while the creditors who originally filed proofs of claim still had enforceable rights in Lubke’s bankruptcy.
Instead, the courts are five years down the road, over a quarter million dollars of originally filed proofs of claim have evaporated, and the biggest beneficiaries of the reopened case — by far — are lawyers. See Reed v. City of Arlington, 620 F.3d 477, 480 n. 2, 483 (5th Cir.2010) (panel opinion).
One may extol the virtues of “innocent” trustees, and I do not question the integrity of this trustee at all, but let us not romanticize what’s going on here. Lubke is going on with his life, effectively freed by the passage of time from the claims of unsecured creditors. It is pure speculation to say, as does the majority, that he has “no assets.” He was not honest about this litigation, why not about other assets? The expressed concern for “the creditors” lacks a certain depth of feeling. Those creditors were, and remain, almost exclusively credit card companies. Two-thirds of their claims will never be repaid because they were not renewed when the case was re-opened long after it had been declared a no-asset filing. The record suggests that others cut their losses by bundling and selling their unpaid claims to third parties.
As for the lawyers, Hurlbut received over $100,000 from Lubke even before the bankruptcy was filed, yet claims from the estate nearly $450,000 in additional fees. The trustee and her attorney will be reimbursed well into six figures as administrative priority claimants who will be paid ahead of the unsecured creditors. All this is legal, but in the commercial world, the transactional costs of such creditor recov *581 ery are wildly disproportionate. Surely courts need not cover our eyes against the real dollar impact of our balancing of “equities.”
The majority notes that in “unusual circumstances,” the doctrine of judicial estoppel may occasionally prevent a trustee from recovering on a claim that the debtor concealed from the courts upon filing for bankruptcy relief. Unfortunately, the majority did not balance the factual equities here as I think was obviously appropriate.

. Notwithstanding the majority's proffered reconciliation of In re Superior Crewboats and Kane, the nuances of bankruptcy procedure fail to explain why judicial estoppel should work differently. The majority finds the distinction in the Superior Crewboats trustee's "abandonment” of a potential lawsuit owned by the debtor, an action that removed the lawsuit from the trustee's control. See 11 U.S.C. § 554. Just as a closed bankruptcy case may be "reopened” when a trustee finds hidden assets, however, an abandonment may be revoked in the best interest of creditors. See, e.g., In re Killebrew, 888 F.2d 1516, 1520 *580 n. 10 (5th Cir.1989); Morion v. Universal Guar. Life Ins. Co., 298 F.3d 609, 618 (7th Cir.2002). The majority opinion should at least apply its own rationale consistently.

. Not until Kane came out, in 2008, was there support in this circuit for the trustee's position.