IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2007

Charles R. Fulbruge III
Clerk

No. 06-30613

SUSAN DOWNEY

Plaintiff-Appellee-Cross-Appellant

v.

RODNEY J STRAIN, JR, Sheriff of Saint Tammany Parish Louisiana

Defendant-Appellant-Cross-Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, BARKSDALE, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Defendant-Appellant-Cross-Appellee Sheriff Rodney Strain ("Strain") appeals from a jury verdict in favor of Plaintiff-Appellee-Cross-Appellant Susan Downey ("Downey") on Downey's claim that Strain violated her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, by failing to provide her with individualized notice that a period of leave would be counted against her FMLA allowance and then transferring her to a different job upon her return. Downey cross-appeals, alleging that the district court abused its

discretion by awarding her only two years of front pay. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Downey was hired to work in the corrections division of the St. Tammany Parish Sheriff's Office. Subsequently, upon her request, she was transferred to a position in the crime lab. In August 2000, Downey sustained a work-related injury to her knee, and in May 2001, Downey sustained injuries to her neck and shoulder in a motor vehicle accident. From November 7, 2002, through March 16, 2003, Downey was on paid leave related to surgeries on her knee and shoulder; on December 29, 2002, Strain notified Downey that he was designating this as FMLA leave, effective December 29. Strain charged Downey with 424 hours of FMLA leave for the period from December 29, 2002, through March 17, 2003 (the "December 2002 leave"). This left Downey with fifty-two hours[1] of FMLA leave remaining through December 28, 2003, the last day of the 365-day FMLA leave period.

On June 18, 2003, Downey injured her left knee in a work-related incident, but she continued to perform her duties through July 29, 2003. During this period, she used eight hours of her FMLA leave, which left her with forty-four hours. To have surgery related to the June 18 injury, Downey took a second period of leave beginning July 30, 2003, and lasting through October 3, 2003 (the "July 2003 leave"). Strain charged Downey with FMLA leave for this period, though he did not specifically notify her that he would do so. As of August 7, 2003, Downey had exhausted her 480 hours of FMLA leave. However, as a result of the other leave Strain provided, Downey was on paid leave through October 3, 2003. When Downey returned to work, she was reassigned to the

---

[1] It is not clear why Downey's balance was fifty-two hours (subtracting the charged 424 hours from the FMLA allowance of 480 hours would appear to leave a balance of fifty-six hours), but the parties stipulated to that figure and it is not relevant to this appeal.

corrections division. In her new position, she did not have some of the fringe benefits she had in her previous position, such as overtime pay and the use of a car.

Downey sued Strain in his official capacity, alleging violations of the FMLA and several other statutes.[2] The district court entered an order granting summary judgment in favor of Strain on most of Downey's claims, but it denied summary judgment on her claim that Strain interfered with her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by failing to provide her with individualized written notice that the July 2003 leave would be designated as FMLA leave, as required by FMLA regulations. See 29 C.F.R. § 825.208(a)-(b)(1). Downey contended that, had she been notified that her July 2003 leave would be counted as FMLA leave, she would have postponed her knee surgery to a time when it would not have caused her to exceed her FMLA allowance. The district court entered an amended order noting that it was undisputed that Downey did not receive individualized written notice that the July 2003 leave would be treated as FMLA leave and leaving for the jury the question of whether Downey was actually prejudiced by the lack of notice. The district court instructed the jury that to prove prejudice, Downey had to show that (1) she could have delayed the knee surgery from July 31, 2003, until December 22, 2003; (2) during this period, she would have been able to perform her full duties in the crime lab; and (3) either it would not have been necessary for her to take any FMLA leave during this period, or if it was, the leave would not have exceeded five and a half work days and for each such day taken she would have been able to delay her absence for surgery by an additional day.

---

[2] Downey also brought claims under Title VII, 42 U.S.C. § 2000e; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; and Louisiana statutes prohibiting gender and disability discrimination. Those claims are not relevant to this appeal.

The jury returned a verdict in favor of Downey and awarded her $16,400 in compensatory back pay. The district court then awarded Downey two years of front pay in the amount of $13,128 as well as reasonable attorney fees and costs. Although Strain made a Rule 50(a) motion for judgment as a matter of law at the close of evidence, he did not make a Rule 50(b) motion or a Rule 59 motion for a new trial after the jury's verdict.

On appeal, Strain asserts that (1) because the regulations requiring employers to provide individualized notice that leave will be counted as FMLA leave are invalid, the district court erred in concluding that Downey did not receive sufficient notice regarding her July 2003 leave; and (2) the jury ignored significant evidence when it reached its conclusion that Downey was prejudiced by the lack of notice. Downey cross-appealed, arguing that the district court abused its discretion by awarding Downey only two years of front pay. We have jurisdiction over this appeal of a final judgment of the United States District Court under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Validity of the regulations requiring individualized notice

The FMLA guarantees eligible employees a total of twelve weeks of leave in a one-year period when the leave is related to certain circumstances, such as the birth of a child or the presence of a serious health condition. 29 U.S.C. § 2612(a)(1). Upon the employee's timely return, the employer must reinstate the employee in his or her previous position or an equivalent position. Id. § 2614(a)(1). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" an employee's FMLA rights. Id. § 2615(a)(1). Employers who violate this provision are subject to consequential damages and appropriate equitable relief. Id. § 2617(a)(1).

The FMLA contains a general notice provision requiring that employers "keep posted, in conspicuous places . . . a notice . . . setting forth excerpts from,

4

or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge." Id. § 2619. The FMLA itself does not contain any more specific requirements governing notice to employees. However, it contains a provision directing the Secretary of Labor (the "Secretary") to "prescribe such regulations as are necessary to carry out" the FMLA. Id. § 2654. Pursuant to this directive, the Secretary issued regulations requiring employers to provide employees with individualized notice when the employers designate leave as FMLA leave. 29 C.F.R. § 825.208(a) provides, "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section." 29 C.F.R. § 825.208(b)(1) provides, "Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is designated and will be counted as FMLA leave." The notification must be "provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave." Id. § 825.301(c).

Downey maintains that Strain interfered with her rights under the FMLA when Strain failed to provide her with individualized notice, as required by these regulations, that the July 2003 leave would be counted against her FMLA leave allowance. Strain does not claim that he provided Downey with specific notice regarding her July 2003 leave that complied with the regulations. Rather, Strain argues that the regulations requiring individualized notice are invalid and that therefore he was not required to provide Downey with individualized notice regarding the July 2003 leave. He asserts that the notice he provided Downey regarding the December 2002 leave was sufficient to inform her of her rights under the FMLA.

Whether the notice regulations are valid is a legal question that this court reviews de novo. See Herbel v. Comm'r of Internal Revenue, 129 F.3d 788, 790 (5th Cir. 1997). In determining whether an FMLA regulation is valid, this court gives considerable weight to the judgment of the Secretary of Labor (the "Secretary") and may not substitute its own preference for a reasonable alternative devised by the Secretary. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002); Bellum v. PCE Constructors, Inc., 407 F.3d 734, 740 (5th Cir. 2005). A regulation will be given controlling weight unless it is "arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).

Neither the Supreme Court nor this court has specifically addressed the validity of the FMLA's individualized notice regulations. However, the Supreme Court's decision in Ragsdale is instructive. In Ragsdale, an employee was granted and took thirty consecutive weeks of leave for treatment of Hodgkin's disease, during which time she was unable to work. 535 U.S. at 84-85, 90. Her employer did not notify her that this leave would count against her twelve-week FMLA entitlement. Id. at 85. Her condition persisted beyond the initial thirty weeks, and when she did not return to work, her employer terminated her. Id. She sued her employer, alleging that she was entitled to an additional twelve weeks of leave based on a penalty regulation providing that if an employee takes medical leave "'and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement.'" Id. at 85 (quoting 29 C.F.R. § 825.700(a)). Her employer challenged the validity of the penalty regulation. Id. at 85-86.

The Supreme Court struck down the penalty regulation, holding that "[t]he challenged regulation is invalid because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any

6

real impairment of their rights and resulting prejudice." Id. at 90. The Court noted,

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation.

Id. at 89. In finding that a showing of prejudice was required for a cause of action under the FMLA, the Court relied on the language of the liability provisions in 29 U.S.C. § 2617. Id. The Court stated, "The employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion." Id. (quoting 29 U.S.C. § 2617(a)(1)). The Court noted that the penalty regulation at issue was "unconnected to any prejudice the employee might have suffered from the employer's lapse." Id. at 88. It found that in the case before it, applying the penalty regulation would allow the employee to sue her employer under the FMLA even though she had not demonstrated that she would have taken less leave had she received the required notice. Id. at 90-91.

The Ragsdale Court did "not decide whether the notice and designation requirements are themselves valid or whether other means of enforcing them might be consistent with the statute." Id. at 96. However, the Court stated,

> By its nature, the remedy created by Congress requires the retrospective, case-by-case examination the Secretary now seeks to eliminate. The purpose of the cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions. To determine whether damages and equitable relief are appropriate under the FMLA, the judge or jury must ask what steps the employee would have taken had circumstances been different.

7

Id. at 91. Moreover, when addressing the plaintiff's contention that an employer's failure to give notice might sometimes burden an employee's exercise of his FMLA rights, the Court found that, although "[t]his position may be reasonable, [] the more extreme one embodied in § 825.700(a) is not." Id. at 90.

This court's decision in Lubke v. City of Arlington provides some additional guidance. 455 F.3d 489 (5th Cir. 2006). In that case, Lubke's employer fired him for missing two days of work without providing adequate medical certification to justify his absence,[3] and Lubke sued his employer under the FMLA. Id. at 493-94. Lubke contended that his employer could not rely on Lubke's failure to provide medical certification because the employer had not complied with regulations specifying how employers must give notice to employees that the employers require medical certification. Id. at 496-97; see 29 C.F.R. §§ 825.301(b)(1), 305(b)-(d). The district court agreed with Lubke and applied a sanction regulation stating that "[i]f an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." Lubke, 455 F.3d at 497; 29 C.F.R. § 825.301(f). On appeal, this court assumed, without deciding, that the district court should not have applied 29 C.F.R. § 825.301(f) as a sanction for the employer's technical noncompliance with the regulations governing requests for certification. Lubke, 455 F.3d at 497. However, applying the reasoning of Ragsdale, we found that the error was harmless:

> Ragsdale's reasoning counsels that the district court could not implement § 825.301(f) if the consequence of doing so was to afford Lubke an FMLA remedy to which he was not otherwise entitled.

---

[3] Under the FMLA, "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee or . . . spouse . . . [and] [t]he employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a).

8

> Absent such entitlement, Lubke could not demonstrate prejudice from the City's defective notice. The jury found, however . . . that Lubke's leave qualified under FMLA. Further, the City conceded that had Lubke submitted the doctors' letters earlier in its investigatory process, it would have approved his FMLA leave. Thus, Lubke clearly proved prejudice because, absent a finding . . . that his medical certification was untimely as a matter of law, he could have submitted the doctors' reports and not been fired.

Id. at 497-98. As a result, we affirmed the judgment in favor of Lubke. Id. at 500.

The Third Circuit's decision in Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004), provides further insight. In Conoshenti, an employee was discharged after being absent from work for more than twelve weeks. Id. at 140. The plaintiff sued his employer under the FMLA, arguing that had the employer notified him of his FMLA rights as required by 29 C.F.R. § 825.208(a) and § 825.301(a)-(c), he would have structured his leave so that he would not have exceeded twelve weeks of leave in a given FMLA period. Id. at 142-43. In concluding that the plaintiff stated a viable theory of recovery, the Third Circuit noted that in light of the regulations imposing a duty to advise the plaintiff of his FMLA rights, "[i]t follows . . . that [the plaintiff] will show an interference with his right to leave under the FMLA, within the meaning of 29 U.S.C. § 2615(a)(1), if he is able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." Id. at 143. The court found helpful the language in Ragsdale, which indicated that the Supreme Court found "'reasonable'" the suggestion that a failure to advise of FMLA rights could constitute an interference with "'an employee's exercise of basic FMLA rights in violation of § 2615.'" Id. (quoting Ragsdale, 535 U.S. at 89-90).

The reasoning of Ragsdale, Lubke, and Conoshenti supports the conclusion that regulations are not arbitrary, capricious, or manifestly contrary to the

FMLA as long as they are enforced in a manner that is consistent with the FMLA's remedial scheme, which requires an employee to prove prejudice as a result of an employer's noncompliance. A regulation must not "relieve[] employees of the burden of proving any real impairment of their rights and resulting prejudice." Ragsdale, 535 U.S. at 90. Rather, courts evaluating an FMLA claim must conduct a "retrospective, case-by-case examination" that addresses "whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." Id. at 91.

Applying this reasoning to the case before us, we find that the individualized notice regulations are valid as enforced here. This case is much more like Lubke and Conoshenti than it is like Ragsdale. First, in contrast to Ragsdale, in which the regulation at issue specified a remedy for the employer's noncompliance (additional leave beyond the twelve weeks prescribed by the FMLA) regardless of whether the noncompliance prejudiced the employee, the regulations at issue here do not. In this case, the employee whose employer violated the individualized notice regulations still bears the burden of demonstrating that her rights have been impaired and that she has been prejudiced. Although the district court noted that Strain's noncompliance was undisputed, it still required Downey to prove that the noncompliance interfered with her rights under the FMLA and thereby caused her prejudice before providing her with a remedy. The district court properly enforced the regulations by conducting the "case-by-case examination" described by the Supreme Court in Ragsdale. Second, like the plaintiffs in Lubke and Conoshenti and unlike the employee in Ragsdale, Downey proved that she was actually prejudiced by her employer's noncompliance with the regulations: had she received individualized notice, she would have been able to postpone her surgery to another FMLA period. This would have allowed her to exercise fully her right

10

to take twelve weeks of protected leave each year under the FMLA, and her position in the crime lab would not have been jeopardized.

Strain urges us to follow the Eleventh Circuit's decision in McGregor v. Autozone, Inc., 180 F.3d 1305 (11th Cir. 1999). In McGregor, an employee claimed that because her employer had not notified her that her thirteen weeks of employer-provided leave would run concurrently with her twelve weeks of FMLA leave, she was entitled to be restored to her position after a fifteen-week absence. Id. at 1307. She relied in part on 29 C.F.R. § 825.208(c), which provides that when an employer fails to notify the employee that leave will be designated as FMLA leave, "none of the absence preceding the notice to the employee of the designation may be counted against the employee's 12-week FMLA leave entitlement." 180 F.3d at 1307; 29 C.F.R. § 825.208(c). The court held that the regulation was "invalid and unenforceable," noting that the FMLA statute "does not suggest that the 12 week entitlement may be extended" and that "[w]here Congress wanted explicit notice provisions with significant consequences, it provided for them." 180 F.3d at 1308. It noted that the regulations "add requirements and grant entitlements beyond those of the statute" and "are inconsistent with the stated purpose of the statute," which is to "'balance the demands of the workplace with the needs of families . . . in a manner that accommodates the legitimate interests of employers.'" Id. (quoting 29 U.S.C. § 2601(b)(3)).

We decline to follow McGregor for several reasons. First, McGregor is of limited usefulness because it preceded the Supreme Court's decision in Ragsdale, in which the Court emphasized the importance of conducting a case-by-case examination of whether a plaintiff has been prejudiced by noncompliance with a regulation. Second, the challenged regulation in McGregor involved 29 C.F.R. § 825.208(c), which provides for extension of the leave period due to an employer's technical noncompliance without reference to any prejudice suffered

11

by the employee. In light of Ragsdale, that provision would likely be invalid; however, that provision is not at issue in this case. Finally, in McGregor, there was no indication that the employer's failure to give notice actually caused the employee any prejudice regarding her ability to exercise her rights under the FMLA.[4]

Strain also contends that language in this court's decision in Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757 (5th Cir. 2001), supports his position. In Hunt, an employee filed suit against her employer, claiming that her employer violated the FMLA and notice regulations by failing to designate her leave as FMLA leave until several weeks after it began and for failing to restore her to her prior position upon her return. Id. at 762. She relied on 29 C.F.R. § 825.208(c), which prohibits an employer from retroactively designating leave as FMLA leave. Id. at 767. We did not address the validity of the regulation, but we stated, "If an employee has received her entitlements under the FMLA, she does not have an FMLA claim regardless of the quality of notice

---

[4] The other cases Strain cites in support of his position are inapposite because they involved plaintiffs who did not necessarily show that they were prejudiced by their employers' failure to notify them of their FMLA rights. Moreover, none of these cases are binding on this court. See Katekovich v. Team Rent A Car of Pittsburgh, Inc., 36 F. App'x 688, 691 (3d Cir. 2002) (holding that an employee who did not present evidence that she could have returned to work prior to the expiration of her FMLA leave allowance was not entitled to additional leave merely because her employer had not properly provided her with notice that the leave was designated as FMLA leave); Perkins v. Dollar Tree Stores, Inc., No. Civ.A. 2:04CV75-P-A, 2005 WL 1229695, at *5 (N.D. Miss. May 24, 2005) (concluding, in a case where the plaintiff "received every benefit to which she was entitled under the FMLA," that Ragsdale implicitly invalidated 29 C.F.R. § 825.208(a)); Farina v. Compuware Corp., 256 F. Supp. 2d 1033, 1056-57 (D. Ariz. 2003) (noting that under Ragsdale, a plaintiff "must show that she detrimentally relied on and was prejudiced by Defendant's improper notice" and that "[p]laintiff provides no evidence that she was prejudiced"); Felder v. Winn-Dixie La., Inc., No. Civ.A.03-1438, 2003 WL 22966364, at *5 (E.D. La. Dec. 16, 2003) (holding, in a case where it was not clear whether the plaintiff suffered prejudice from the lack of notice, that a plaintiff could not obtain reinstatement based on lack of notice); Smith v. Blue Dot Servs. Co., 283 F. Supp. 2d 1200, 1205 (D. Kan. 2003) (holding that a plaintiff who was unable to return to work before his FMLA leave expired did not allege any denial of an FMLA right but noting that Ragsdale left open the possibility that employees could recover for notice violations on a case-by-case basis if there was actual harm resulting from the violations).

that she received." Id. at 767-68. This dictum does not help Strain. First, it predates Ragsdale and Lubke, the cases that provide our current framework for determining whether an employer's noncompliance with a regulation gives rise to a cause of action under the FMLA. Second, here, Downey did not receive all of her entitlements under the FMLA; the jury found that had she received proper notice, she would have restructured her leave in a way that allowed her to receive those entitlements.

In sum, we hold that because Downey showed that Strain's noncompliance with the individualized notice regulations impaired her ability to exercise her rights under the FMLA and thereby caused her prejudice, enforcement of the notice regulations here is consistent with the FMLA's remedial scheme. Thus, the notice regulations are not arbitrary, capricious, or manifestly contrary to the FMLA and are valid as enforced in this case.

B. Sufficiency of the evidence supporting the jury's finding of prejudice

Strain maintains that the jury erred when it found that Downey was prejudiced by Strain's failure to provide her with notice regarding her second period of absence. He argues that the jury either ignored or rejected testimony by Downey's treating physician showing that Downey would have been unable to perform her job duties had she postponed her knee surgery until after December 22, 2003. However, Strain waived his right to appeal on the grounds of sufficiency of the evidence because he did not file a motion under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law after the jury's verdict. See Unitherm Food Sys., Inc. v. Swift-Ekrich, Inc., 546 U.S. 394, 400-401 (2006).[5]

---

[5] Strain's argument that he is not challenging the overall sufficiency of the evidence, but is instead asserting that the jury ignored or rejected a specific piece of evidence, is unsupported by any authority and is without merit.

13

In Unitherm, the Supreme Court held that when a party files a Rule 50(a) preverdict motion for judgment as a matter of law but files neither a Rule 50(b) postverdict motion nor a Rule 59 motion for a new trial, the party is precluded from seeking appellate review of the sufficiency of the evidence supporting the verdict. Id. The Court held that the district court's denial of a Rule 50(a) motion cannot form the basis of a party's appeal because such denial is "merely an exercise of the District Court's discretion, in accordance with the text of the Rule and the accepted practice of permitting the jury to make an initial judgment about the sufficiency of the evidence." Id. at 406; see also FED. R. CIV. P. 50(a) ("the court may determine" that there is no legally sufficient evidentiary basis and "may grant a motion for judgment as a matter of law") (emphasis added). Strain asserts that such a motion was unnecessary because he filed a Rule 50(a) preverdict motion and no additional evidence was introduced by either party after that motion. Thus, he argues, renewing his motion when the district court had already denied his previous motion based on the same evidence would have been a "vain and useless" act. However, Strain cites no authority for this proposition. Moreover, contrary to Strain's assertion, Unitherm indicates that a Rule 50(b) motion is necessary to preserve an argument for appellate review even when a Rule 50(a) motion was denied after all the evidence was presented:

> "Even at the close of all the evidence it may be desirable to refrain from granting a motion for judgment as a matter of law despite the fact that it would be possible for the district court to do so. If judgment as a matter of law is granted and the appellate court holds that the evidence in fact was sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is expedited greatly. If the jury agrees with the court's appraisal of the evidence, and returns a verdict for the party who moved for judgment as a matter of law, the case is at an end. If the jury brings in a different verdict, the trial court can grant a renewed motion for judgment as a matter of law. Then if the appellate court holds that the trial court was in error in its

14

appraisal of the evidence, it can reverse and order judgment on the verdict of the jury, without any need for a new trial. For this reason the appellate courts repeatedly have said that it usually is desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion."

546 U.S. at 405-06 (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2533, at 319) (2d ed. 1995) (footnote omitted) (emphasis added).

Unitherm establishes that a party who wishes to appeal on grounds of insufficient evidence must make a Rule 50(b) motion for judgment as a matter of law after the jury's verdict, even when the party has previously made a Rule 50(a) motion. Because Strain failed to make a Rule 50(b) motion, there is no basis for this court to review his challenge to the sufficiency of the evidence.

## C. Award of front pay

Downey argues that the district court erred in awarding her only two years of front pay. We review the district court's award of front pay for abuse of discretion. Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir. 2001). The FMLA provides that "[a]ny employer who violates section 2615 of this title shall be liable to any eligible employee affected . . . for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Although reinstatement is the preferred equitable remedy, see Giles, 245 F.3d at 489 n.27, the parties here stipulated that reinstatement was not feasible. In exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case. Id. at 489. "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." Sellers v. Delgado Coll., 781 F.2d 503, 505 (5th Cir. 1986). This court has identified several factors to be considered in determining the amount of a front pay award: (1) the length of

prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship. Reneau v. Wayne Griffin & Sons, Inc., 945 F.2d 869, 871 (5th Cir. 1991).

Downey initially requested a front pay award of five years, and Strain suggested an award of two to three years. In setting the award at two years, the district court gave three reasons: (1) the uncertainty inherent in employment in a political office (Sheriff Strain is an elected official), (2) the fact that Downey had previously sought transfer from the crime lab, and (3) the speculative nature of front pay. Downey argues that the district court's reliance on each of these factors was improper. First, she contends that her employment was stable, noting that she had been employed in the sheriff's office for eighteen years and that there was no evidence in the record that she was so highly placed that she could lawfully have been fired for political reasons. Second, she maintains that the only reason she requested transfer from the crime lab was that she had personal issues with her former supervisor and that his retirement prior to the July 2003 leave eliminated any motivation she had to transfer. She argues that there was no evidence of any conflict with her new supervisor aside from that resulting from Downey's lawsuit. Strain disputes this, claiming that Downey actually had issues with the new supervisor. Third, Downey contends that the speculative nature of front pay is not itself a reason for finding a particular duration of an award of front pay.

We hold that the district court did not abuse its discretion in awarding Downey two years of front pay. The district court's examination of the likelihood that the political nature of the sheriff's office would impact the permanency of Downey's job was a proper part of the "intelligent guesswork" it must conduct. See Decorte v. Jordan, No. Civ.A. 03-1239, 2005 WL 1431699, at *3 (E.D. La.

16

May 26, 2005) (noting that "the nature of employment in a political office such as the District Attorney's Office is subject to the vagaries of politics" and awarding two years of front pay to plaintiffs who had worked in the District Attorney's Office). It was also a direct application of the second Reneau factor, which directs the court to consider the permanency of the position held. The district court's consideration of Downey's previous transfer requests was also proper. Downey's testimony suggests that her transfer requests were related to a conflict with her former supervisor, and it is not clear from the record whether Downey also had personal issues with her new supervisor or only with her former supervisor. However, the mere fact that she had twice requested transfers suggests that she was not completely dedicated to remaining in the crime lab and was willing to initiate possible job changes. Finally, the district court did not err in noting that the speculative nature of front pay factored into its decision to award two years of front pay. See Burns v. Tex. City Ref., Inc., 890 F.2d 747, 753 n.4 (5th Cir. 1989) ("The longer the front pay period, the more speculative the front pay award.")

## III. CONCLUSION

For the foregoing reasons, we hold that the FMLA regulations requiring employers to provide individualized notice to employees when the employers designate a period of leave as FMLA leave are valid as enforced in this case, that Strain waived his right to appeal the jury's conclusion that Strain's failure to comply with the regulations caused Downey prejudice, and that the district court did not abuse its discretion in awarding Downey two years of front pay. Therefore, we AFFIRM the judgment of the district court.
AFFIRMED.