ATTORNEYS FOR APPELLANT
John P. Reed
Hammond, Indiana

Gregory S. Reising
Gary, Indiana

ATTORNEYS FOR APPELLEE
Anna M. Hearn
Thomas F. Macke
Valparaiso, Indiana

ATTORNEY FOR AMICUS CURIAE
NATIONAL EMPLOYMENT LAWYERS
ASSOCIATION
Tae Sture
Indianapolis, Indiana

In the

Indiana Supreme Court

**FILED**

May 19 2009, 11:06 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 45S03-0809-CV-482

GARY COMMUNITY SCHOOL CORPORATION,

*Appellant/Cross-Appellee*
*(Defendant below),*

v.

TOM POWELL,

*Appellee/Cross-Appellant*
*(Plaintiff below).*

Appeal from the Lake Superior Court, No. 45D10-0306-PL-58
The Honorable John R. Pera, Judge
The Honorable Thomas Webber, Sr., Judge Pro Tempore

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-0701-CV-17

**May 19, 2009**

**Boehm, Justice.**

We hold that an employee filling multiple positions with the same employer is eligible for leave under the federal Family and Medical Leave Act if that employee's total service is sufficient to qualify, even if service in either position alone does not qualify. We hold that a

"front pay" award for future lost wages should be discounted to its present value.  We otherwise affirm the judgment of the trial court.

**Facts and Procedural History**

Tom Powell has taught math at Lew Wallace High School in Gary since 1987.  From 1987 to 1999, Powell served as an assistant football coach, and in 2000, he was promoted to head football coach.  Beginning in 1995, Powell also served as assistant basketball coach at Lew Wallace.  For the 2001–2002 school year, Powell was under contract as a math teacher, night school teacher, and head football coach.

On July 31, 2001, the second day of football practice, Powell developed a blood clot in his leg that required hospitalization.  After three weeks of leave, he returned to work, but reinjured his leg and required another four weeks of leave.

On October 1, Powell returned to his positions as math teacher and night school teacher, but learned that the board of Gary Community School Corporation ("GCSC") had fired him from his head football coaching position and replaced him with the assistant coach.  Powell complained to the Lew Wallace principal and also spoke with a reporter from the Gary Post-Tribune.  On October 13, the Post-Tribune published an article reporting that Powell had been fired after taking medical leave with an injured leg.  After the football season, Powell learned that he would no longer be assistant basketball coach.

Powell applied for the head football coaching position in 2002 and 2003 and was rejected both times.  In June 2003, Powell brought this action alleging that GCSC violated the Family and Medical Leave Act ("FMLA") by failing to restore him as coach for the 2001 season and by retaliating against him for taking FMLA leave by rejecting him as head football coach in subsequent years.  Powell and GCSC both moved for summary judgment on several issues, including whether Powell's leave was covered by the FMLA.  The trial court granted summary judgment for Powell on this issue and concluded that GCSC had violated the FMLA by failing to reinstate Powell as head football coach in 2001.  Damages for failure to reinstate remained for trial along with Powell's separate claim that GCSC had retaliated for taking FMLA leave.  The trial resulted in an award of damages totaling $280,200.20 for the failure to reinstate and the

retaliation claims. The trial court reduced the award to $188,919.29 and added prejudgment interest of $18,274 and attorneys fees of $125,000.

The Court of Appeals reversed, concluding that Powell was not eligible for FMLA leave. Gary Cmty. Sch. Corp. v. Powell, 881 N.E.2d 57, 58 (Ind. Ct. App. 2008), reh'g denied. We granted transfer.

## I. The Family and Medical Leave Act

The Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–54 (2008), entitles certain employees to twelve weeks of unpaid leave for the employee's serious health condition, the birth or adoption of a child, or the employee's need to care for a seriously ill family member. Id. § 2612. Following a qualified leave, an eligible employee is entitled to be restored to the former position or one with equivalent benefits, pay, and conditions of employment. Id. § 2614(a)(1). The employee may sue in federal or state court for damages, equitable relief, and fees if an employer interferes with the employee's FMLA rights or retaliates for the exercise of those rights. Id. §§ 2615, 2617.

GCSC contends that (1) Powell was not an eligible employee with respect to his head football coaching position and (2) insufficient evidence supported the jury's determination that GCSC retaliated against Powell.

### A. *Powell's FMLA Eligibility*

Under the FMLA, an "eligible employee" is entitled to be restored to "the position of employment held by the employee when the leave commenced" or "an equivalent position." 29 U.S.C. § 2614(a)(1). One of the requirements of an "eligible employee" is employment by the employer "for at least 1,250 hours of service with such employer during the previous twelve-month period." Id. § 2611(2)(A). In the twelve months before his leave, Powell served more than 1,250 hours in his capacity as a math teacher, but fewer than 1,250 hours as head football coach. Powell asserts that his total hours of service to GCSC required his reinstatement in all capacities. GCSC argues that Powell's service as teacher and coach are to be viewed separately for purposes of the FMLA, so Powell was entitled to reinstatement as a teacher, but not as a coach.

3

Whether an employee's FMLA eligibility is determined by the employee's entire service to the employer or separately for each position is an issue of first impression. The trial court concluded that Powell was an eligible employee for purposes of both his teaching and coaching positions. The Court of Appeals reversed, holding that the issue is controlled by the parties' treatment of the jobs as unified or separate. Gary Cmty. Sch. Corp. v. Powell, 881 N.E.2d 57, 58 (Ind. Ct. App. 2008). The Court of Appeals concluded that because the parties "treated the jobs as entirely separate and independent of one another," they are separate for the purposes of FMLA coverage. Id. Because this issue is a question of law, we review it de novo. For the reasons explained below, we hold that an employee filling multiple positions with the same employer is eligible for FMLA leave as to all positions if that employee has completed 1,250 total hours of service to that employer in the twelve months preceding the request for leave.

Because this issue is purely an issue of statutory interpretation, we look first to the language of the FMLA. The parties are the Gary Community School Corporation—an "employer" subject to the FMLA—and Powell as an employee. An "employee" is defined in the FMLA simply as "any individual employed by an employer." 29 U.S.C. §§ 203(e)(1), 203(d), 2611(3). Employers are defined as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." Id. § 2611(4)(A)(i). Only an "eligible employee" may assert claims under the FMLA. The definition of "eligible employee" in § 2611(2) requires: (1) employment for at least 12 months by the employer from whom leave was requested, id. § 2611(2)(A)(i), and (2) employment for at least 1,250 hours of service by that employer during the previous 12-month period, id. § 2611(2)(A)(ii). None of these definitions suggests that separate positions held by the employee are relevant. Importantly, the test for eligibility is phrased in terms of "hours of service" to an "employer," not service in any particular position. In short, the definitions are entity specific, not job specific, and the service requirements for an eligible employee are in terms of overall service, not service in any specific position.

Our conclusion that the 1,250-hour requirement applies to the employee's overall service to the employer is supported by the legislative history of the FMLA and applicable federal regulations. Committee reports accompanying passage of the FMLA instruct that the "minimum

4

hours of service requirement is meant to be construed broadly." H.R. Rep. No. 103-8(I), at 35 (1993); S. Rep. No. 103-3, at 25 (1993). The FMLA directs that regulations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 (2008), apply under the FMLA for determining hours of service. § 2611(2)(C). Under the FLSA, to determine hours worked for purposes of overtime compensation "the employer must total all the hours worked by the employee for him in that workweek (even though two or more unrelated job assignments may have been performed) . . . ." 29 C.F.R. § 778.103 (2008). Similarly, FMLA regulations provide that the determination of hours worked "is not limited by methods of recordkeeping, or by compensation agreements that do not accurately reflect all the hours an employee has worked for or been in service to the employer. Any accurate accounting of actual hours worked under FLSA's principles may be used." Id. § 825.110(c)(1); see also H.R. Rep. 103-8(I), at 35 (same); S. Rep. No. 103-3, at 25 (same). Finally, the regulations provide that "[n]ormally the legal entity which employs the employee is the employer under FMLA. Applying this principle, a corporation is a single employer rather than its separate establishments or divisions." 29 C.F.R. § 825.104(c); see also id. § 825.600 (describing the "school board" as the employer for purposes of the 50-employee test in its example). Thus, GCSC—the legal entity employing Powell—is the employer under the FMLA, even though Powell had separate academic and athletic supervisors.

GCSC points to § 207 of the FLSA, incorporated by reference in the FMLA. The only portion of § 207 arguably relevant to Powell's relationship with GCSC is subsection (p)(2), which provides

> If an employee of a public agency which is a . . . political subdivision of a State . . . undertakes, on an occasional or sporadic basis and solely at the employee's option, part-time employment for the public agency which is in a different capacity from any capacity in which the employee is regularly employed with the public agency, the hours such employee was employed in performing the different employment shall be excluded by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.

Gary argues that Powell's coaching position was such a position and should therefore be excluded from the FMLA hours of service calculation. It seems a stretch to characterize a head football coaching position as "occasional or sporadic" or "solely at the employee's option." Moreover, the regulation under section 207 specifically explains that "any activity traditionally associated with teaching (e.g., coaching, career counseling, etc.) will not be considered as

5

employment in a *different capacity*." 29 C.F.R. § 553.30(c)(5) (2008). We do not find subsection (p)(2) applicable to Powell's employment.

Finally, GCSC notes that it employed Powell under separate contracts and may have issued separate paychecks for coach and teacher. In view of the statute and regulations already described, we do not find these relevant.

B. *The Retaliation Claim*

Powell's claim for "retaliation" seeks damages resulting from GCSC's actions against Powell for "opposing any practice made unlawful" by the FMLA. Powell claims that his opposition to GCSC's initial FMLA violation during the 2001 football season resulted in his being denied employment as head football and assistant basketball coach for the seasons from 2002 to his anticipated retirement in 2014. At trial, the jury found that GCSC had retaliated against Powell and awarded the full amount of damages sought by Powell.

On appeal, GCSC argues that there was insufficient evidence to support the jury's determination that GCSC had retaliated against Powell, particularly in light of GCSC's asserted proper reasons for not rehiring Powell. The Court of Appeals, finding the eligibility issue dispositive, did not address the retaliation claim. When reviewing a claim of insufficient evidence, we do not reweigh evidence or judge the credibility of witnesses. We affirm a verdict when, considering the probative evidence and reasonable inferences, a reasonable jury could have arrived at the same determination. Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 521 (Ind. 1993). We conclude that Powell has presented sufficient evidence to support the jury's conclusion that GCSC retaliated against him for complaining about not being reinstated.

FMLA retaliation claims have been evaluated in federal circuit courts reviewing summary judgments by applying the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). Phillips v. Mathews, 547 F.3d 905, 912 (8th Cir. 2008); Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008); Martin v. Brevard County Pub. Sch., 543 F.3d 1261, 1268 (11th Cir. 2008); Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006); Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 175 (2d Cir. 2006). On appeal from a jury verdict, however, the McDonnell Douglas presumptions fade

away, and the appellate court reviews "whether the evidence is sufficient to support whatever finding was made at trial." E.g., Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2008).

Although juries do not rigidly apply the McDonnell Douglas framework, it is a useful tool for evaluating the sufficiency of Powell's evidence. Under this framework, the employee must first show that he engaged in activity protected by the FMLA, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity. The burden then shifts to the employer to present evidence of a proper reason for the adverse employment action. Finally, the burden returns to the employee to establish that the employer's proffered explanation is a pretext. McDonnell Douglas, 411 U.S. at 802–04.

*1. Protected activity.* Here, Powell argues that he engaged in protected activity—taking FMLA leave and opposing GCSC's FMLA violation by complaining to the newspaper. A newspaper article published October 13, 2001, shortly after Powell's termination as head football coach, stated:

> Imagine you have a job, one you like very much. But one day, on the job, you get hurt. After going through proper channels to inform your employer of your work status, you expect to return to that job when healthy.
>
> Instead, when you return, you learn you have been terminated. Any human resources director knows you can't fire a productive employee because he or she is sick.
>
> But it happened to Thomas Powell II, Wallace's coach . . . .

The newspaper reporter and Powell testified that Powell was the source of information for the article. Similarly, a May 22, 2002 article, published when Powell had applied as head football coach for the 2002 season, stated:

> Powell missed most of the first six weeks of the [2001] season after he developed a blood clot in his leg.
>
> When he tried to return to the sidelines on October 1, Hoover told him that he had been replaced.

GCSC disputes that Powell complained to the newspaper about an FMLA violation, stressing that no article quoted him as saying he was fired for taking FMLA leave. Although none of the newspaper articles explicitly refers to the FMLA, the jury could have reasonably concluded from the articles that Powell complained to the newspaper about GCSC's failure to reinstate him after taking medical leave. We agree with Powell that his complaints to the

7

newspaper were acts "opposing" actions prohibited by the FMLA, and therefore were not a permissible ground for retaliation.

2. *Adverse employment action and causal connection.* Powell experienced an adverse employment action when he was subsequently not hired as head football and assistant basketball coach. The timing of this action in relation to Powell's complaints suggests a causal connection. On May 22, 2002, a three-person committee consisting of Lew Wallace's principal and athletic director and a parent recommended Powell for head football coach for the 2002 season. The same day, a newspaper article referring to Powell's medical leave was published. On May 29, the GCSC athletic director, who was not a member of the recommending committee, sent a memorandum to the superintendant explaining why he would not recommend Powell. The memorandum's reasons included "Thomas Powell created a number of problems for the players and the coaching staff after he failed in his attempt to get his job back," and "He was in contact with the news media and several articles were perpetrated with unfounded statements through Thomas Powell."

3. *Employer's legitimate reasons.* GCSC responds that it did not rehire Powell for legitimate reasons unrelated to his FMLA leave or complaints to the press. First, GCSC alleges that Powell failed to obtain a proper medical examination form from a football player who was later injured and sued the school. Second, GCSC points to an incident in which Powell allegedly gambled with a student over a one-on-one basketball game. Third, GCSC asserts that the coach selected for the 2002 season, who had played in the Rose Bowl and was an All Big Ten football player, was superior to Powell. Finally, GCSC argues that Powell had no expectation that he would be hired as football coach for the 2002 season because all coaches in the school system are terminated at the end of each season per school policy.

4. *Pretext.* Powell argues that GCSC's proffered proper reasons are pretextual. Powell notes that the medical form and gambling incidents occurred during 2000, before both the Lew Wallace and GCSC athletic directors recommended Powell for the 2001 season. Powell also points out that the GCSC athletic director omitted these incidents from his list of reasons for not recommending Powell in 2002. Powell also argues that the coach hired for the 2002 season was not more qualified because he was not a certified teacher, and certified teachers were to receive

8

priority for coaching positions pursuant to GCSC's Collective Bargaining Agreement. Finally, regarding the school's automatic termination policy, Powell presented evidence that the head basketball coach did not reapply or interview for his position from 1995 until 2006, when he was replaced.

Given the statements of GCSC's athletic director, the temporal proximity of the statements to the newspaper articles, and Powell's rebuttal of GCSC's proffered nondiscriminatory reasons, the jury had sufficient evidence to find that Powell's protected actions were causally related to his not being rehired as head football coach.

## II. Damages Issues

GCSC raises several challenges to the award of damages: these include (1) whether the trial court erred in entering judgment on an erroneous verdict form, and (2) whether the amount of damages was too high considering Powell's efforts to mitigate damages, the propriety of front pay, and the trial court's failure to discount the front pay award to present value.

### A. *Verdict Form*

GCSC argues that the trial court erred in entering judgment on an erroneous verdict form and by failing to grant GCSC a new trial. The verdict form contained a series of questions to aid the jury in arriving at its verdict. The trial court read the verdict form in full before submitting it to the jury, and GCSC did not object. GCSC has waived any issue regarding the verdict form by failing to object to the form at trial. See Fisher v. State, 810 N.E.2d 674, 677 (Ind. 2004) ("[T]he law is settled that failure to object to a jury instruction given by the trial court waives the issue for review . . . .").

### B. *Amount of Damages*

The FMLA provides for damages to include lost wages, with "interest at the prevailing rate" plus "liquidated damages" equal to the lost wages and interest. 29 U.S.C. § 2617 (2008). The statute also provides for "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." Id. § 2617. Because "front pay" is available, if at all, as equitable relief, the amount of front pay is set by the court and is reviewed for abuse of

9

discretion. Downey v. Strain, 510 F.3d 534, 544 (5th Cir. 2007); Whittington v. Nordam Group, Inc., 429 F.3d 986, 1000 (10th Cir. 2005); Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 504 (4th Cir. 2001); see McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005). But see Arban v. West Publ'g. Corp., 345 F.3d 390, 406 (6th Cir. 2003) ("While the determination of the precise amount of an award of front pay is a jury question, the initial determination of the propriety of an award of front pay is a matter for the court."). Federal courts have identified numerous factors that are relevant to a court's award of front pay, including length of prior employment, permanency of the position held, nature of the work, age and physical condition of the employee, possible consolidation of jobs, work life expectancy, availability of other work opportunities, the employee's duty to mitigate, possible increases in salary, and methods to discount any award to net present value. Downey, 510 F.3d at 544; Whittington, 429 F.3d at 1000–01; Arban, 354 F.3d at 406. Federal courts have stressed that front pay "must avoid granting the plaintiff a windfall." Whittington, 429 F.3d at 1001; see also Nichols, 251 F.3d at 504 (award of front pay must be "tempered by the potential for windfall to the plaintiff").

The trial court submitted the front pay issue to the jury in an advisory capacity. The jury awarded front pay in an amount equal to the amount Powell requested for eight additional years as head football coach and assistant basketball coach, with three-percent annual increases ($91,280.91), and doubled that amount pursuant to the statute's provision for "liquidated damages." The trial court requested additional briefing on the front pay award, and both parties submitted additional materials regarding the jury's role and whether liquidated damages were appropriate on a front pay award. The trial court entered judgment on September 27, 2006, adopting the jury's front pay recommendation but removing the liquidated damages portion, resulting in a front pay award of $91,280.91. The total damages awarded for back pay and front pay were $188,919.29.

GCSC appeals the trial court's award of damages. GCSC first argues that Powell should have been awarded no more than $5,174.93 in total damages because Powell failed to mitigate his damages. GCSC next argues that given the award of back pay and prejudgment interest, the trial court should not have awarded any front pay. Finally, GCSC argues that the trial court abused its discretion by failing to discount the front pay award to present value.

*1. Mitigation of damages.* GCSC argues that the trial court abused its discretion in awarding front pay because Powell failed to mitigate his damages. At trial, Powell contended that he mitigated his damages by applying for the head football position at Lew Wallace in 2002, 2003, 2004, and 2005, and at East Chicago Central High School in 2006. Powell also presented evidence that obtaining a coaching position outside GCSC would be difficult because collective bargaining agreements give priority to teachers within a school system. Although GCSC contends that these efforts at mitigation were not sufficient, this is a matter for the trier of fact. We cannot say as a matter of law these efforts were insufficient.

*2. Propriety of front pay.* GCSC argues that the award of front pay is improper because it duplicates some or all of the award for liquidated damages and prejudgment interest. GCSC cites Price v. Marshall Erdman & Associates, Inc., a case under the Age Discrimination in Employment Act, which described liquidated damages as both punitive and compensatory. 966 F.2d 320, 326 (7th Cir. 1992). However, the Seventh Circuit concluded in Price that "while previous cases . . . suggest that the presence or absence of a liquidated damages award is material in determining entitlement to front pay, we think it should play only a very small role in that determination." Id. Federal circuit courts have upheld awards of front pay in addition to liquidated damages and prejudgment interest. E.g., Hite v. Vermeer Mfg. Co., 446 F.3d 858, 861 (8th Cir. 2008); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960, 966 (10th Cir. 2002). The statute clearly permits all three, and GCSC has identified no demonstrable duplication in the award. We therefore cannot say the trial court's award is clearly erroneous.

*3. Discounting front pay to present value.* Following entry of the judgment, Powell requested prejudgment interest and GCSC moved to discount the front pay award to its present value. The trial court granted Powell's motion but denied GCSC's. Powell argues that GCSC waived its claim to discount the front pay award by failing to raise the issue during trial, in its supplemental briefing, or in its motion to correct errors. These issues were first presented when the trial court awarded front pay. We do not find them waived when they were raised in post-trial motions and the trial court addressed them.

In this case, Powell presented evidence that he would have continued to coach football and basketball until 2014, and that his pay for those positions would have increased at three

percent per year. Powell claimed total future lost wages of $91,280.91, and the trial court awarded that amount. We cannot say the trial court abused its discretion in awarding front pay in exercise of its equity jurisdiction, but front pay should be discounted to present value. Without discounting, Powell would receive a windfall in the form of the use of the money years before it would have been earned. See Downey, 510 F.3d at 544 (listing discounting any award to present value as a consideration in awarding front pay); see also Whittington, 429 F.3d at 1001; Arban, 354 F.3d at 406; Nichols, 251 F.3d at 504.

GCSC points us to 28 U.S.C. 1961 (2008), which generally provides for the interest rate "on any money judgment in a civil case recovered in a district court." We do not believe this statute applies here. It is a general provision for postjudgment interest on federal court judgments and is not specific to the FMLA. There is no clear federal authority regarding the discount rate applicable to an award of front pay under the FMLA. In the absence of federal authority, we use the Indiana statutory rate of eight percent, which is the same annual rate the trial court used to add prejudgment interest.

### III.  Attorney Fees

The FMLA provides that "in addition to any judgment awarded to the plaintiff," the court "shall . . . allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." § 2617(a)(3). On cross-appeal, Powell claims three errors involving attorney fees: (1) the trial court failed to enter findings of fact and conclusions of law in its attorney fees award; (2) the trial court admitted an untimely expert affidavit; and (3) the trial court reduced the attorney fees from the amount requested by Powell. For the reasons explained below, we affirm the trial court's attorney fees award.

#### A.  *Failure to Enter Findings of Fact and Conclusions of Law*

Powell first claims that the trial court's award of attorney fees is clearly erroneous because the trial court failed to enter findings of fact and conclusions of law. Unlike Federal Rule of Civil Procedure 52, Indiana Trial Rule 52 provides that, with certain exceptions, the trial court need not make findings and conclusions. State procedures govern federal causes of action tried in state courts. E.g., Missouri ex rel. St. Louis v. Taylor, 266 U.S. 200, 209 (U.S. 1924)

12

("The origin of the right does not affect the manner of administering the remedy. The grant of concurrent jurisdiction implies that, in the first instance, the plaintiff shall have the choice of the court."); Thompson v. Med. Licensing Bd., 180 Ind. App. 333, 348, 398 N.E.2d 679, 680 (1979) ("[A] state court does not undergo a metamorphosis into a federal court merely because it must decide a § 1983 suit. No matter what the nature of the action before an Indiana state court, it remains a state court. . . . Our rules of trial procedure and evidence still apply. . . . If [plaintiff] desired the benefit of federal procedures, he should have brought his suit in federal court."). Powell does not identify any applicable exception to the Indiana rule that findings are not required, so the trial court's failure to enter findings and conclusions was not error.

B. *Reduction of Attorney Fees Requested by Powell*

Powell contends that the trial court abused its discretion in awarding attorney fees in an amount less than what Powell requested. Powell requested $214,630.08 in fees and expenses, including supplemental fees incurred post-trial. In support of this request, Powell submitted itemized billing statements from his attorneys and their support staff, receipts for litigation expenses, affidavits of his attorneys detailing their qualifications, and the affidavits of four attorneys stating that the requested fees and hourly rates were reasonable. On the morning of the fees hearing, GCSC submitted the affidavit of a local attorney apparently stating that the hourly rates requested by Powell's attorneys were too high. After considering the parties' submissions, the trial court awarded attorney fees of $125,000, an amount which Powell contends is too low.

The appropriate amount of attorney fees depends on a number of factors including the skill and experience of the attorney, the extent of effort required, and the amounts in dispute. Based on the limited record before us we cannot say the trial court's resolution of this issue was an abuse of discretion.

C. *Admission of Expert Affidavit*

Powell argues that the trial court abused its discretion in admitting the affidavit described above on the morning of the attorney fees hearing. Powell notes that Indiana Trial Rule 6(D) provides that "opposing affidavits may be served not less than one [1] day before the hearing." Powell omits the exception to this rule—"unless the court permits them to be served at some

other time." Ind. Trial Rule 6(D). Powell concedes that the trial court is authorized to permit the affidavit to be served late, but argues that the delay was unfair surprise and prevented him from conducting discovery and the affidavit. But Powell concedes that the trial court permitted him to respond to the affidavit. We find no reversible error here.

## Conclusion

This case is remanded for the trial court to discount the front pay award to present value. The judgment of the trial court is otherwise affirmed.

Shepard, C.J., and Sullivan, Rucker, JJ., concur.

Dickson, J., dissents, believing that the Court of Appeals correctly decided the issues in the case.